

Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, NY 10036

(212) 790-9200 Tel
(212) 575-0671 Fax
www.cll.com

**Eric J. Shimanoff**
(212) 790-9226
ejs@cll.com

December 26, 2018

**Via ECF**
Hon. Edgardo Ramos
United States District Judge
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

> Re:   *Lopez v. True Religion, et al.*, No 18-10595 (S.D.N.Y.)

Dear Hon. Judge Ramos:

We represent Defendant The Endurance International Group, Inc. ("Endurance") in the above-referenced litigation. Pursuant to Rule 2.A.ii of your Individual Practices, we write to request a pre-motion conference concerning Endurance's anticipated motion to dismiss Plaintiff Robert Lopez's ("Lopez") complaint against Endurance for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Lopez is a serial *pro se* plaintiff who has filed over 35 intellectual property litigations against over 130 parties in this District alone. Lopez filed the instant suit against thirteen defendants, primarily based on the defendants' purported uses on apparel of the geographically descriptive term "Lower East Side," over which Lopez claims exclusive trademark rights. Indeed, it appears that Lopez spends significant time trolling the Internet for third party uses of the phrase "Lower East Side," or other purported trademarks over which he claims rights, sues the party, quickly extracts a minimal settlement from the party who wants to avoid litigation costs and then voluntarily dismisses the suit.

Endurance is an internet service provider that hosts, ***but does not create or control***, the content of myriad third party websites, including www.yellowratbastard.com. In his complaint, Lopez alleges that the t-shirt shown in Exhibit A hereto and previously offered for sale by www.yellowratbastard.com (the "T-Shirt") infringes Lopez's purported trademark rights in the phrase "Lower East Side." On November 25, 2018, Lopez sent a notice of alleged infringement to Endurance demanding removal of the T-Shirt from www.yellowratbastard.com within 24 hours. Endurance suspended the website within the timeframe requested by Lopez. Before the 24 period had even lapsed, Lopez apparently filed his amended complaint in the instant suit, adding Endurance as a defendant and falsely alleging that Endurance itself was advertising and

**Cowan, Liebowitz & Latman, P.C.**
Hon. Edgardo Ramos
December 26, 2018
Page 2

offering for sale the T-Shirt, when Lopez fully knew that Endurance merely was a hosting ISP for the underlying website. Lopez also falsely alleges that Endurance failed to "expeditiously" remove the T-Shirt from the www.yellowratbastard.com website when Endurance removed the content within the 24 hours requested in Lopez's notice.

Setting aside these factual misrepresentations, Lopez's complaint fails to state a legal claim against Endurance. A mere hosting ISP that does not create or directly control the content of the myriad third party websites on its servers cannot be held directly liable for trademark infringement. *See Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 501 (S.D.N.Y. 2008) (company that did not create content but merely hosted third party content not liable for direct infringement), *aff'd*, 600 F.3d 93, 106 (2d Cir. 2010); *Tre Milano, LLC v. Amazon.Com, Inc.*, 2012 Cal. App. Unpub. LEXIS 6163, at *37-38 (Cal. Ct. App. Aug. 22, 2012) (no direct liability where "Amazon is a service provider, not the seller"). *See also GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457, 464 (S.D.N.Y. 2011) (no direct liability where defendant did not take title to or place labels on goods, but merely provided showroom services for goods).

Nor can Endurance be held liable under a theory of secondary liability, either contributorily or vicariously.

With respect to contributory liability, there are no plausible allegations that Endurance (1) intentionally induced the owner of the www.yellowratbastard.com to infringe Lopez's purported trademarks, or (2) continued to supply its web hosting service to www.yellowratbastard.com after it had reason to know the site was engaging in infringing activities. *See Tiffany*, 600 F.3d at 106. Endurance has no relationship with www.yellowratbastard.com other than as hosting ISP. Endurance expeditiously removed the T-Shirt within 24 hours after receiving Lopez's notice of alleged infringement. No contributory liability can lie under such circumstances, despite Lopez's conclusory allegations to the contrary. *See Tiffany*, 600 F.3d at109 (no contributory liability where website removed third party content within days after receiving notices of infringements). Moreover, as discussed herein, there was no ***definitive*** trademark violation in the first instance about which Endurance could have knowledge for purposes of contributory liability, since Lopez's claims against www.yellowratbastard.com are precluded by the fair use doctrine. *See Tiffany*, 576 F. Supp. 2d at 133 ("mere assertions . . . are insufficient to impute knowledge" where "activity at issue is not always infringing"); *Dentsply Sirona Inc. v. Net32, Inc.*, 2018 U.S. Dist. LEXIS 5044, at *13 (M.D. Pa. Jan. 11, 2018) (no contributory infringement where claim of infringement is reasonably disputable and plaintiff's notice "failed to articulate why the products offered for sale on Net32's website were" infringing).

Vicarious liability "requires a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992). The complaint alleges no such partnership or authority, nor could it. *See, e.g., Ascentive, LLC v. Op. Corp.*, 842 F. Supp. 2d 450, 471 (E.D.N.Y. 2011) (dismissing vicarious trademark claim).

**Cowan, Liebowitz & Latman, P.C.**
Hon. Edgardo Ramos
December 26, 2018
Page 3

Finally, Lopez's trademark claims are precluded by the fair use doctrine.  Trademark law "was [not] meant to deprive commercial speakers of the ordinary utility of descriptive words." *KP Permanent Make-Up*, 543 U.S. 111, 122 (2004).  Recognizing "the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first," *id.*, Congress codified the common law defense of descriptive (or classic) fair use in Section 33(b)(4) of the Lanham Act, 15 U.S.C. § 1115(b)(4).  The fair use defense allows a junior user to utilize a term or phrase in good faith, not as a trademark to indicate the source of its goods, but rather to describe its products to the public, irrespective of any trademark rights the senior user may have.  *See KP Permanent Make-Up*, 543 U.S. at 118.  As is readily apparent from even a cursory review of the T-Shirt, the use of the phrase "The Lower East Side" thereon is clearly descriptive of the graphic image of the Lower East Side neighborhood of New York City that appears prominently on the front of the T-Shirt.  *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (2d Cir. 1976) ("safari" descriptive for boots imported from Africa used for hunting and traveling expeditions); *Dessert Beauty, Inc. v Fox*, 568 F. Supp. 2d 416, 425 (S.D.N.Y. 2008) ("love potion" descriptive of beauty product meant to attract another person).  Nothing about the use of the phrase indicates it is a trademark indicating the source of the goods sold on the www.yellowratbastard.com website.  To the contrary, the shirt clearly contains a neck tag indicating the brand and the website owner's stylized logo and registered mark appear prominently on the website.  *See Cosmetically Sealed Indus. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30-31 (2d Cir. 1997) ("Chesebrough's promotional display clearly and prominently connected [its] lipstick to [its] well known 'CUTEX' brand name").  Given the descriptive nature and use of the term "Lower East Side," the website owner's prominent use of its own brands and the numerous third party uses of "Lower East Side" in connection with apparel (Lopez's complaint alone references several), there is no plausible indication that the website owner acted in bad faith to usurp any goodwill in Lopez's alleged marks (to the extent any exists) or to cause consumer confusion.  *See W.W.W. Pharmaceutical Co., Inc. v. Gillette Co.*, 984 F.2d 567, 575 (2d Cir. 1993) ("Gillette selected a name which matched the image it was trying to project as well as the shape of the product"); *Dessert Beauty*, 568 F. Supp. 2d at 427-28 ("DBI products had the DESSERT trademark and indicia, reflecting DBI's efforts to differentiate its products in the marketplace rather than to trade on Fox's . . . good will").  Without any primary trademark violation, Lopez's claims against Endurance for secondary liability fail as a matter of law.

Based on the foregoing, Endurance intends to file a motion to dismiss Lopez's complaint and requests a pre-motion conference with respect thereto.

Sincerely,

Eric J. Shimanoff

cc:     Plaintiff (via Email and First Class Mail)
        All Counsel of Record (via ECF)

EXHIBIT A

